**Pamela K. MARTENS, et al., Plaintiffs,**

v.

**SMITH BARNEY, INC.,**
**et al., Defendants.**

**No. 96 Civ. 3779(CBM).**

United States District Court,
S.D. New York.

May 15, 2000.

---

Michele Lang Palter, Joseph D. Garrison, Gary Phelan, Garrison, Phelan, Levin-Epstein & Penzel, New Haven, CT, for Pamela K. Martens and Edna Broyles.

### MEMORANDUM OPINION

MOTLEY, District Judge.

### BACKGROUND

This case has extensive procedural history, the relevant excerpts of which are summarized below. The underlying claim involves charges of workplace gender discrimination against Smith Barney, Inc. and several of its officers (collectively referred to as "the Smith Barney Defendants"). Plaintiffs initially filed this suit as a putative class action in May of 1996. The plaintiff class and the Smith Barney defendants proposed a settlement agreement in November of 1997. At that time the court conditionally certified the class and provided for notice of the settlement to class members. The terms of the settlement afforded plaintiffs the opportunity to opt out of the settlement class. Named plaintiffs Pamela K. Martens and Judith P. Mione opted out of the settlement on March 21, 1998. The court rejected an initial version of the settlement agreement in June of 1998. In July of 1998 the court certified the class and approved an amended version of the settlement agreement.

At the time when opt-out plaintiffs Martens and Mione elected to remove themselves from the class they had the obligation to actively pursue their individual claims if they wished to preserve such claims. Martens and Mione did not actively pursue their individual claims at that time. Martens and Mione allowed fifteen months to elapse before they took any action to pursue their individual claims. It was not until June 25, 1999 that Martens and Mione expressed their intent to proceed with discovery regarding their individual claims against Smith Barney and noticed depositions of two former Smith Barney employees to be held in August of 1999. The court can divine no reasonable excuse for this fifteen months of inactivity from March of 1998 when Martens and Mione opted out of the class until June of 1999 when they first took action to pursue individual claims.

Martens and Mione were represented by counsel during the relevant time period and engaged in numerous activities of litigation. However, none of Martens' and Mione's pettifogery related to advancing their individual claims but, instead, focused on interloping in the affairs of the class. In late March of 1998 Martens and Mione, although they had opted out of the class, sought to participate in the fairness hearing on the proposed class settlement. They were specifically instructed by the court at that time that, as persons who were no longer class members, their participation was not warranted. In August of 1998 Martens and Mione attempted to file papers with the court seeking reconsideration of a decision relating to the class. In November of 1998 this court ordered those papers stricken on the grounds that Martens and Mione were no longer class members.

During the fifteen months at issue, Martens and Mione entirely neglected their individual claims and instead devoted their substantial efforts to derailing the class settlement. These actions gave this court cause for concern that perhaps Martens and Mione misunderstood the implications of their opt-out decision. The court entertained the possibility that perhaps Martens and Mione failed to grasp the fact that their election to opt-out of the class settlement

meant that they were no longer class members for any purpose. As such, they assumed the obligation to actively pursue their individual claims apart from the class if they intended to seek resolution of such claims in a judicial forum.

By opinion and order dated December 2, 1999, the court clarified for Martens and Mione the consequences of having opted out of the class settlement and granted them the opportunity not once but three times thereafter to rejoin the plaintiff class in case the extent of their exclusion had been unintentional. Martens and Mione declined each such opportunity to rejoin the class, asserting their intention to pursue individual claims before this court. The court now concludes that Martens' and Mione's failure to advance their individual claims stemmed not from confusion but from inexcusable delay sufficient to dismiss those claims pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute.

FAILURE TO PROSECUTE

The duty to endeavor to move a case forward falls squarely on the shoulders of the plaintiff. See *Lukensow v. Harley Cars of N.Y.*, 124 F.R.D. 64, 66 (S.D.N.Y.1989) (it is neither the duty of the court nor the defendant "to take any steps to bring this case to trial"). When a plaintiff fails to satisfy this duty, the district court may exercise its inherent power to dismiss the action for failure to prosecute. See *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (upholding the district court's authority to dismiss an action sua sponte and without the need for prior notice or hearing). The value of the district court's authority to dismiss a claim for failure to prosecute is clearly established. "Rule 41(b) serves not only to protect defendants but also to aid courts in keeping administrative control over their dockets and to deter other litigants from engaging in dilatory behavior". *Lukensow v. Harley Cars of N.Y.*, 124 F.R.D. 64, 67 (S.D.N.Y.1989).

It is well settled that district judges enjoy broad discretion to dismiss a stagnating claim for failure to prosecute. "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted". *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). No litigant enjoys the right to preserve a claim which he has allowed to lie fallow in the hopes of reaping a more fruitful resolution at a later date. Allowing dilatory plaintiffs to pursue their claims unfairly prejudices not only the defendants in the present action but also the numerous other litigants who must compete for limited judicial resources. "Burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir.1980). Although actual prejudice need not be proven in order for a court to dismiss a claim for failure to prosecute, the present defendants were indeed prejudiced by this inexcusable delay. See *Peart v. City of N.Y.*, 992 F.2d 458, 462 (2nd Cir.1993) ("prejudice resulting from unreasonable delay may be presumed as a matter of law"). The present defendants were prejudiced by both Martens' and Mione's inappropriate actions and inactions during the fifteen months at issue. Defendants expended significant resources responding to Martens' and Mione's numerous actions to attempt to derail the class settlement. Defendants' were also prejudiced by Martens' and Mione's inaction as the defendants' ability to effectively present evidence as to their individual claims has been hampered by the passage of such a great length of time, as is presumed in every case, but has actually occurred here in this complex, time consuming and unique class settlement.

The nature and duration of Martens' and Mione's dilatory tactics justifies dismissal of their claims. The Second Circuit has upheld dismissals under Fed.R.Civ.P. 41(b) when the plaintiff's delay was of shorter duration than 15 months. See generally *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664 (2d Cir.1980) (six months of inactivity held sufficient to support dismissal); (seven months of inactivity held sufficient to support dismissal); *Fischer v. Dover Steamship Co.*, 218 F.2d 682 (2d Cir.1955); *Cucurillo v. Schulte, Bruns Schiff Gesellschaft, M.B.H.*, 324 F.2d 234 (2d Cir.1963) (twelve months of inactivity held sufficient to support dismissal). *Ahmed v. I.N.S.*, 911 F.Supp. 132 (S.D.N.Y.1996).

Although the court has not ordered either party to brief the issue of failure to prosecute, the parties' briefs on the issue of whether Martens' and Mione's individual claims should be barred by laches sheds light on the relevant factors regarding failure to prosecute. Plaintiffs' own memorandum suggests that plaintiffs' delay in pursuing individual claims was not an excusable oversight but was calculated and strategic. Plaintiffs offer two motivations for their delay in pursuing discovery related to their individual claims; 1) plaintiffs wrongly suggest that had the settlement stipulation failed to take effect on February 1, 1999 their unconditional election to opt out of the class would somehow be annulled; and 2) plaintiffs further argue they were justified in delaying until the Second Circuit resolved whether mandatory arbitration of employment discrimination constitutes a per se violation of Title VII. See *Pls'. Mem. of Law* at 19. In light of Martens' and Mione's actions since opting out of the class, far from providing a valid excuse for delay, plaintiffs' professed motivations smack of opportunistic maneuvering.

Martens' and Mione's actions before this court from March of 1998 through June of 1999 served only to squander limited judicial resources without making any effort to advance their individual claims a single step. In light of Martens' and Mione's history of behavior in this action, this court now determines that no lesser sanction than dismissal would be appropriate or effective.

CONCLUSION

The court now finds that Martens' and Mione's fifteen month delay in pursuing their individual claims was unreasonable and inexcusable. As such, all of Martens' and Mione's individual claims shall be dismissed with prejudice pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute.